*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PRESTON WIMBUSH | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 13-4654(FLW) |
| JOHN JENKINS, *et al.* | : | **OPINION** |
| Defendant. | : | |

**WOLFSON, United States District Judge**:

Plaintiff Preston Wimbush[1] ("Plaintiff") filed a Complaint in state court arising out of injuries Plaintiff allegedly sustained on February 4, 2011.  The Complaint, which includes claims sounding in, *inter alia*, tort, supervisory liability, malicious prosecution, and false imprisonment, was removed to this Court under 28 U.S.C. § 1447, based on this Court's federal question jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims.  *See id.*, § 1367.  Presently before the Court are several motions to dismiss and for summary judgment filed by the various Defendants.  For the following reasons, the Court finds that Plaintiff's Complaint is timely filed only with respect to Plaintiff's false imprisonment, malicious prosecution, and derivative claims, and accordingly

---

[1]   The Notice of Removal names Plaintiff as "Winbush;" however all other papers filed in this matter—including Plaintiff's Complaint—use the spelling "Wimbush," including an affidavit filed by Plaintiff in opposition to one of the Defendants' motions. Similarly, the docket before this Court is captioned "Wimbush," but Plaintiff is separately listed as "Winbush." Plaintiff has not specifically identified which is the correct spelling of his name; however, it appears that the more commonly, and most recently, employed spelling is "Wimbush," which the Court adopts for the purpose of this Opinion.

1

dismisses all other claims in the Complaint on the basis that they are barred by the doctrine of sovereign immunity or are time-barred by the applicable statute of limitations.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff is a New Jersey resident. Compl. On February 4, 2011, Plaintiff was on the premises of property in Trenton belonging to Defendant Candlelight Lounge, Inc. and Eulogio C. Bradley (collectively, "Candlelight"). *Id.* at Count Six, ¶ 2. While walking outside on Candlelight's property, Plaintiff was shot at several times by Defendant John Jenkins ("Jenkins")—then an employee of Defendant New Jersey Department of Corrections ("NJDOC")—who was using his NJDOC issued firearm[3], causing Plaintiff to sustain severe injuries that required treatment. *Id.* at Count One, ¶¶ 1, 3-4. Shortly thereafter, Plaintiff was arrested by Defendant City of Trenton Police Department for aggravated assault. *Id.* at Count Seven, ¶¶ 3-4. Plaintiff's criminal charges were later dismissed by the state court. *Id.* at ¶ 6.

On February 5, 2013, Plaintiff filed a thirteen-count Complaint in the Superior Court of New Jersey against Defendants Jenkins, Candlelight, NJDOC, as well as Defendant Jason Snyder ("Snyder") and the City of Trenton Police Department and City of Trenton (together, "Trenton Police") (collectively, "Defendants"). In Counts One through Three, Plaintiff brings personal injury tort claims against Jenkins. In Counts Four and Five, Plaintiff brings negligent supervision and *respondeat superior* claims against NJDOC, arising out of Jenkin's alleged

---

[2]   The following facts are taken from the Complaint and are assumed true and/or are undisputed; additional, disputed facts will be set forth as necessary. In that connection, the Court notes that those Defendants moving for summary judgment on the statute of limitations defense, other than Defendant New Jersey Department of Corrections, have not admitted to any facts probative of those Defendants' ultimate liability, and the Court makes no determination in that regard as those facts are not material to the statute of limitations.

[3]   Although NJDOC disputes that Jenkins was using an NJDOC firearm, because NJDOC is seeking dismissal under Rule 12(b)(6), and because the Complaint pleads that Jenkins was using an NJDOC firearm, I must take this fact to be true for the purposes of this Opinion.

conduct. In Count Six, Plaintiff brings a negligent premises liability claim against Candlelight. In Counts Seven through Nine, Plaintiff brings malicious prosecution, false imprisonment, and gross negligence claims against Snyder, as well as unnamed defendants, arising out of Plaintiff's arrest and criminal proceedings, as well as a conspiracy to prevent wrongdoing claim in Count Twelve. In Counts Ten and Eleven, Plaintiff brings negligent supervision and *respondeat superior* claims against Trenton Police. Lastly, in Count Thirteen, Plaintiff brings a claim for violation of his constitutional rights against all Defendants under 42 U.S.C. § 1983.

Trenton Police timely removed Plaintiffs Complaint to this Court on August 1, 2013. Defendants Jenkins, Snyder, and Trenton Police each filed an Answer. The Defendants then filed the following motions: (i) a motion to dismiss by Jenkins; (ii) a motion for summary judgment by Snyder; (iii) a motion for summary judgment by Candlelight; (iv) a motion for summary judgment by Trenton Police; and (v) a motion to dismiss by NJDOC. Plaintiff has opposed each of these motions.

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . .

3

. must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has act unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). For the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35). However, the Third Circuit has emphasized that notwithstanding the foregoing, "a claimant does not have to 'set out in detail the facts upon which he bases his claim.' . . . The pleading standard 'is not akin to a 'probability requirement,'" . . . . [T]o survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" *Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (citations omitted)).

B. **Motion for Summary Judgment**

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* Fed R. Civ. P. 56(c); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir.

4

2000) (citing Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366.

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* Fed R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See* Brooks, 204 F.3d at 105 n.5 (citing *Anderson*, 477 U.S. at 249); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

At the outset, the Court notes that Plaintiff's Complaint is poorly pleaded. In some Counts it initially appears that Plaintiff is bringing state law claims; only a thorough reading leads to the inference that Plaintiff is instead intending to bring a claim under § 1983 for a violation of his federal rights, asserting violations by certain Defendants "under color of law."

5

Moreover, certain Counts refer ambiguously to "defendants," forcing the Court to attempt to discern from context which particular Defendant(s) are encompassed in each Count. Plaintiff's opposition papers do little to help resolve these problems.

Turning to the motions at issue, other than NJDOC, Defendants' motions are based solely on the contention that Plaintiff's Complaint was untimely filed.[4] In addition to the statute of limitations defense, NJDOC has also moved to dismiss the Complaint on the grounds that it is immune from suit under the Eleventh Amendment, that Plaintiff failed to timely serve NJDOC, and that NJDOC cannot be held liable under a theory of *respondeat superior* in this matter. I address NJDOC's argument that all claims against it are barred by the doctrine of sovereign immunity first, as that implicates this Court's subject matter jurisdiction over NJDOC, and then proceed to the remaining Defendants' claims.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment precludes federal jurisdiction over a state absent the state's consent to suit. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. *Id.* at 101-102; *Alabama v. Pugh*, 438 U.S. 781 (1978). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the

---

[4] The sole exception is that Defendant Jenkins has also moved to dismiss on the basis that Plaintiff's claims against Jenkins were discharged in bankruptcy. Because I find that Plaintiff's Complaint is clearly time-barred as to Jenkins, I do not reach this additional argument.

Government from acting or to compel it to act." 873 F.2d 655, 659 (3d Cir. 1989). In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001).[5]

NJDOC argues, that it is immune from suit because it is considered an "arm of the state" and that any judgment against it would have to be paid by the public treasury. This Court agrees. NJDOC enjoys minimal autonomy, operating under a commissioner appointed by the New Jersey Governor with the consent of the state Senate. *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 539 (D.N.J. 1989). NJDOC therefore stands in the shoes of New Jersey for sovereign immunity purposes and may not be sued in federal court. *Accord Endl v. New Jersey*, Civ. No. 2:12-3564 KM, 2014 WL 1050738 (D.N.J. Mar. 13, 2014); *see also Didiano v. Balicki*, 488 F. App'x 634, 638-39 (3d Cir. 2012) (affirming grant of summary judgment on Section 1983 and NJCRA claims in favor of DOC and DOC official sued in official capacity); *Simrin v. Corr. Med. Servs.*, Civ. No. 05-2223(RBK), 2006 WL 469677, at *2 (Feb. 24, 2006) (dismissing claims against NJ DOC pursuant to Eleventh Amendment and Section 1983).

Plaintiff nevertheless contends in his opposition papers to NJDOC's motion that he may pursue his claims against NJDOC as state law claims brought under the New Jersey Civil Rights Act ("NJCRA"). To begin, as I noted above, Plaintiff's Complaint reads as if he is asserting a § 1983 claim against NJDOC, as well as a common law *respondeat superior* claim. Nowhere in the Complaint does Plaintiff allege that NJDOC violated the NJCRA, and Plaintiff may not

---

[5] The Third Circuit has explained that "there are only three narrowly circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003) (citing *MCI Telecomms. Corp. v. Bell Atlantic-Pennsylvania Serv.*, 271 F.3d 491, 503 (3d Cir. 2001), *cert. denied*, 537 U.S. 941 (2002). Plaintiff has not argued that any of these "narrowly circumscribed" exceptions apply.

amend his pleadings through his briefs. *McArdle v. Tronetti*, 961 F.2d 1083, 1089 (3d Cir. 1992); *Penn ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); Del *Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002); *Cardiology Consultants of North Morris v. UFCW Local*, Civ. No. 06-5557, 2007 WL 4570160, *3 n.5 (D.N.J. Dec. 21, 2007). Moreover, Plaintiff's argument, which relies on New Jersey state case law, is misplaced, as sovereign immunity is immunity from suit in *federal* court. The Eleventh Amendment immunity enjoyed by NJDOC prevents Plaintiff from bringing a claim against it in this Court under either § 1983 or the NJCRA. *See Didiano v. Balicki*, 488 F. App'x at 638-39. In that connection, although not specifically argued by Plaintiff, I note that the fact that the Complaint was originally filed in state court and then removed to this Court does not alter my analysis. NJDOC did not join in Trenton Police's decision to remove the Complaint because at the time of removal NJDOC had not been served.[6] After being served, and pursuant to a scheduling order set by the Magistrate Judge, NJDOC immediately moved to dismiss Plaintiff's claims under sovereign immunity. Where the party seeking to invoke sovereign immunity is not the party who removed the action, there is no waiver. *Compare Beightler v. Office of Essex Cnty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) ("Here, *Beightler* chose the forum, and the [state] defendants claimed sovereign immunity from the outset. ECPO's presence in federal court was thus involuntary and did not waive its sovereign immunity.") *with Lapides v. Board of Regents*, 535 U.S. 613, 617 (2002) (holding sovereign immunity may be waived where state is the removing party); *see also Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir.

---

[6]  Although Plaintiff contests the issue of service, Plaintiff has provided no evidence to contradict NJDOC's assertion of when it was served. Indeed, the service records provided by Plaintiff in support of his argument that he attempted service on NJDOC actually pertain to Plaintiff's attempt to serve Jenkins via NJDOC, they do not show that Plaintiff ever tried to serve NJDOC itself.

2008) (holding that "immunity from suit in federal court and immunity from liability" are distinct types of sovereign immunity encompassed by the Eleventh Amendment, and thus, even if a state waives it immunity from suit in federal court, it does not necessarily waive its immunity"). In any event, NJDOC, the entity, may not be sued under either § 1983 or the NJCRA because those statutes only applies to "persons" and state governmental entities are explicitly excluded from the definition of persons under the statutes. *See Didiano v. Balicki*, 488 F. App'x at 638-39. Accordingly, I find that this Court lacks jurisdiction over Plaintiff's claims against NJDOC based on the doctrine of sovereign immunity and dismiss Counts Four and Five of the Complaint.[7]

Each remaining Defendant moves solely on the basis that Plaintiff's Complaint was untimely filed under the applicable statute of limitations, and should be dismissed. Specifically, Defendants contend that Plaintiff's New Jersey common law claims and 42 U.S.C. § 1983 claims are barred by the two year statute of limitations for personal injury tort claims. N.J.S.A. 2A:14-2a; *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) (New Jersey's two-year personal injury statute of limitations applies to § 1983 claims). According to Defendants, Plaintiff's claims arising out of his alleged gunshot injuries accrued when they occurred on February 4, 2011; however, Defendants argue, Plaintiff's Complaint was not filed until February 5, 2013, as indicated by the date stamps on the Complaint and the case detail listed in the New Jersey Judiciary Public Access system—making Plaintiff's Complaint untimely. Plaintiff opposes dismissal on this basis for two reasons: first, that date stamps on the Complaint are not dispositive of the Complaint's filing date, and second, that the statute of limitations should not be

---

[7] Moreover, even assuming *arguendo* that NJDOC waived its immunity, because there is no dispute that Plaintiff's claims against NJDOC accrued on the day that Plaintiff was allegedly injured by Jenkins, these claims would nevertheless also be time-barred for the reasons explained *infra*.

strictly construed under these circumstances to preclude his claims. Defendants in turn respond that the evidence overwhelmingly shows that the Complaint was not filed until February 5, 2011, and that Plaintiff has not demonstrated his entitlement to any equitable relief from the strict application of the statute of limitations. I address these issues in turn.

Under New Jersey law, a claim is properly brought when it is filed with the appropriate clerk of the court. *Poetz v. Mix*, 7 N.J. 436, 442 (1951) ("[A] paper or pleading is considered as filed when delivered to the proper custodian and received by him to be kept on file."). Specifically, "[c]ivil actions in the Law Division, are commenced by filing the original complaint with the deputy clerk of the Superior Court in the county of venue. R. 1:5-6(b)(1)." *MacDonald v. Giovine*, Civ. No. A-4696-04T2, 2006 WL 1549763 at *2 (N.J. Super. Ct. App. Div. June 8, 2006). In that connection, "'unlike service, which is complete upon mailing, filing can only be effected by the receipt of the filed paper by the designated office.'" *Id.* (quoting Pressler, Current N.J. Court Rules, comment 2 on R. 1:5-6 (2006)). Here, Plaintiff's Complaint is stamped several times with the date of February 5, 2011. Indeed, there are two separate stamps from the Deputy Clerk of the Superior Court of Mercer County, each dated February 5, 2011, that appear to reflect both when the Complaint was received and when it was entered. Compl., 1. These date stamps lead to the presumption that the Complaint was received by the clerk on February 5, 2011. *See Poetz*, *supra* (holding that the endorsement of the clerk is evidence of the date of filing). Because Plaintiff offers no evidence to the contrary to rebut this presumption, I find that the Complaint was filed on February 5, 2011.

Plaintiff nevertheless argues that even if it is true that his Complaint was not filed until February 5, 2013, the Court should not strictly construe the statute of limitations to bar his claims. In support, Plaintiff relies on a New Jersey Supreme Court case setting forth several

factors that a court should consider when determining whether a claim is time-barred: (i) lack of prejudice to the defendant(s); (ii) a series of steps taken by the plaintiff to comply with the statute of limitations; (iii) the plaintiff's general compliance with the purpose of the statute; (iv) reasonable notice of the plaintiff's claim; and (v) a reasonable explanation of why there was not strict compliance with the statute. *See Negron v Llarena*, 156 N.J. 296, 305 (1998). Plaintiff argues that he has satisfied each of these factors in this case. Specifically, Plaintiff contends that a one-day delay beyond the statute of limitations has not prejudiced Defendants, and also demonstrates general compliance with the statute. Similarly, Plaintiff argues that Defendants were on notice because another party involved in the incident had filed a lawsuit, which should have led Defendants to anticipate Plaintiff's suit, and along with the fact that Plaintiff had previously filed a notice of tort claim. Lastly, Plaintiff argues that his former counsel[8] took a series of steps to comply with the statute—to wit, mailing the Complaint on February 1, 2011, to a court house located only 25 miles away—and that the only, and reasonable, explanation for the untimely filing is some sort of "clerical error" that caused the mail to be delivered a day later than usual. Thus, Plaintiff contends that he should be entitled to pursue his state law claims, notwithstanding his non-compliance with the statute of limitations.

Plaintiff's argument, while superficially appealing, is not supported by the case law. Although the "substantial compliance" doctrine initially appears to provide Plaintiff relief from the statute of limitations based on the facts of this case, both New Jersey state and federal courts have explained that the test is a stringent one, to be applied sparingly in only the most extreme or inequitable circumstances. *E.g.*, *Leake v. Bullock*, 104 N.J. Super. 309, 250 A.2d 27 (App. Div.

---

[8] As discussed more *infra*, around June 2013, after the filing of the Complaint, Plaintiff replaced his counsel. *See* Pl. Opp. to Jenkin's Mot. to Dismiss, Ex. A.

1969);[9] *Byrd v. Manning*, 253 N.J. Super. 307, 319-20, 601 A.2d 770, 776 (App. Div. 1992) (rejecting plaintiff's request to toll statute of limitations because plaintiff was subject to ongoing criminal proceedings); *see Khalil v. Costa*, Civ. No. A-0146-09T3, 2010 WL 2346397, at *1 (N.J. Super. Ct. App. Div. June 11, 2010) ("We recognize that the error prompting the late filing was caused by prior counsel and not plaintiff or his present counsel; nevertheless, defendants were entitled to the benefit of the statute, and we will not intervene."); *Dorn v. New Linden Price Rite*, Civ. No. A-1544-04T1, 2005 WL 2470104, at *3 (N.J. Super. Ct. App. Div. Oct. 7, 2005) (rejecting substantial compliance application were there was no unforeseen force outside of party's control that prevented compliance with rule); *see also Avila v. Aramark Corp.*, Civ. No. 10-00326, 2010 WL 3025169 (D.N.J. July 30, 2010) (finding no substantial compliance or basis for equitable tolling even where defendant did not dispute that it was on notice of the plaintiff's claim). Even the *Negron* case that Plaintiff relies upon so heavily emphasizes that substantial compliance is only appropriate in situations where the party seeking its benefit acted quickly and diligently. *Negron v Llarena*, 156 N.J. at 305; *see also Binder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304, 311 (App. Div. 2007) ("[I]n Negron, the Supreme Court expressed that to benefit from substantial compliance, a plaintiff should act diligently.").

The facts here simply do not rise to the level necessary to find substantial compliance. In choosing to place the Complaint in the mail for filing only three days before the expiration of the

---

[9] Although Plaintiff argues that the rule expressed in *Leake* has been done away with, or at least relaxed, Plaintiff has provided no case law to support this argument, and this Court has uncovered no New Jersey state or federal case questioning the validity of *Leake*'s reasoning or holding. To the contrary, the Appellate Division has recently cited with approval *Leake*'s stringent application of the statute of limitations. *Khalil v. Costa*, Civ. No. A-0146-09T3, 2010 WL 2346397, at *1 (N.J. Super. Ct. App. Div. June 11, 2010); *see also Avila v. Aramark Corp.*, Civ. No. 10-00326, 2010 WL 3025169 (D.N.J. July 30, 2010) ("The decision in *Khalil* illustrates the high standard that New Jersey courts have set for litigants seeking equitable relief for the technical defeats of claims, which is a standard that the Plaintiff in the instant case has failed to meet.").

statute of limitations, Plaintiff's counsel failed to exercise the level of diligence that is required to demonstrate substantial compliance under New Jersey law. *See Fahey v. Hollywood Bicycle Ctr., Inc.*, CIV. 08-3573(RBK), 2009 WL 749856, at *3 (D.N.J. Mar. 18, 2009) ("[Plaintiffs'] attorney's lack of diligence is not a reasonable explanation; nor is their mistaken belief that the discovery rule extended the statute of limitations. Therefore, the Court finds that Plaintiffs did not substantially comply with the statute of limitations.") *aff'd*, 386 F. App'x 289 (3d Cir. 2010). Instead, in order to substantially comply with the statute of limitations, Plaintiff's counsel should have attempted to file the Complaint in person or, at a minimum, arrange for an overnight courier. *E.g.*, *Stegmeier v. St. Elizabeth Hosp.*, 239 N.J.Super. 475, 481-82 (App. Div. 1990) (finding substantial compliance where attorney arranged for filing via overnight messenger service when statute of limitations deadline was near, but filing occurred late due to error by messenger service); *see also Thomas v. Toys "R" Us, Inc.*, 282 N.J. Super. 569, 578-79 (App. Div.), *certif. denied*, 142 N.J. 574 (1995) (finding substantial compliance in attorney's attempt to timely deposit motion papers at post office on normal business day, but was prevented from doing so because of unforeseen incident closing post office). For these reasons, I determine that Plaintiff is not entitled to a finding of "substantial compliance" with the statute of limitations.

Plaintiff also raises a similar argument with respect to his § 1983 claims, which are governed by the federal equitable tolling doctrine and, like the New Jersey substantial compliance doctrine, "functions to stop the statute of limitations from running where the claim's accrual date has already passed. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). The Third Circuit has explained that there are generally three situations in which equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary

13

way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* Only the first of these three situations applies here.

Equitable tolling of a statute of limitations is to be applied sparingly. *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (holding that "equitable tolling is an extraordinary remedy which should be extended only sparingly"); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240-41 (3d Cir. 1999). In the context of attorney default, which is Plaintiff's primary basis for tolling here, the Third Circuit has emphasized that equitable tolling is only appropriate in extreme circumstances, such as where the attorney has in fact abandoned the client by leaving town, or where the attorney affirmatively misrepresented information to his client *and* the plaintiff exercised extreme diligence in pursuing her claim. *Id.*; *Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004); *Baker v. Office Depot, Inc.*, 115 F. App'x 574, 577-78 (3d Cir. 2004). Significantly, "Plaintiff bears the burden of persuasion to demonstrate that equitable tolling is warranted." *Parker v. Royal Oak Enters., Inc.*, 85 F. App'x 292, 295 (3d Cir. 2003). For the reasons explained above in connection with Plaintiff's substantial compliance argument, as well as the following additional reasons, I find that Plaintiff has not carried his burden of demonstrating that equitable tolling is appropriate in the circumstances of this case because he has not shown any extraordinary circumstances, outside the control of Plaintiff or his former counsel, or shown that Plaintiff was extremely diligent in pursuing his claim.

It is Plaintiff's contention that his former attorney mislead him into believing that (i) Plaintiff could not file a civil action until his ongoing criminal proceedings had completed, and (ii) in any event, Plaintiff's attorney had timely filed the Complaint. *See* Pl. Opp. to Jenkins' Mot., Affidavit ¶¶ 7-8. The normal rule is that an attorney's negligent conduct is attributable to a

party absent a finding of gross negligence. *See Seitzinger*, 165 F.3d at 237 ("an attorney's delinquency is chargeable to a client and is not a basis for equitable tolling"); *Baker*, 115 F. App'x 574, 577-78 (rejecting equitable tolling where basis for compliance was attorney's "garden variety neglect"); *Garcia v. Warren*, Civ. No. 12-7680 JAP, 2013 WL 3221306, at *3 (D.N.J. June 25, 2013) ("[A]ttorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." (citing *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)). Here, Plaintiff's former counsel's actions are appropriately characterized as garden-variety negligence—as noted, counsel simply failed to exercise the necessary diligence to ensure that his client's Complaint was timely filed, such as utilizing an overnight delivery service to file the Complaint—and thus Plaintiff cannot avoid the statute of limitations on this basis. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (stating that a party arguing that equitable tolling should apply bears the burden of proving that (1) such party has been pursuing his or her rights diligently, and (2) some extraordinary circumstance stood in the way); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the [party] failed to exercise due diligence in preserving his legal rights.").

Plaintiff's contention that his attorney mislead Plaintiff regarding the status of his case and the attorney's alleged actions are more troublesome but, under the circumstances of this case, Plaintiff has not shown that it would be proper for this court to equitably toll the statute of limitations. Neither Plaintiff's affidavit, in support of his substantial compliance/equitable tolling claims, nor Plaintiff's brief provide sufficient details of the steps that Plaintiff or Plaintiff's new counsel took to ensure that the action was proceeding in a timely manner. Plaintiff's affidavit, dated November 1, 2013, states that, upon advice of his prior counsel,

15

Plaintiff believed that the statute of limitations "did not begin to toll [*sic*] until after my criminal complaint was dismissed."[10]  Pl. Opp. to Jenkins' Mot., Affidavit ¶ 7.  Plaintiff also states that, apparently at the time Plaintiff filed the affidavit, his former counsel was "refus[ing] to cooperate and return phone calls" and thus "it has been very difficult for [Plaintiff] to determine what has or has not been done in [Plaintiff's] case *until this point*." *Id.* at ¶ 9 (emphasis added).

Plaintiff, however, has provided no information regarding his relationship with his former counsel around the time the Complaint was filed.  Nor has Plaintiff set forth any facts that explain when he learned that his Complaint might have been untimely filed, or any steps that Plaintiff took to rectify the error.  Indeed, it appears that Plaintiff did not attempt to retain new counsel until around mid-June 2013, almost six months after the Complaint had been (untimely) filed.  Plaintiff thus had failed to show diligence necessary for equitable tolling, and has therefore failed to carry his burden of demonstrating why the statute of limitations should not be strictly applied to him.  *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) ("[A plaintiff must show he] exercised due diligence in pursuing and preserving [his] claim [in order to] receive the benefit of equitable tolling."); *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) (holding that for equitable tolling to apply, the plaintiff must show active misleading . . . and must further show that he exercised reasonable diligence" (citing *Oshiver*, 38 F.3d at 1391 n.10)); *cf. Seitzinger,* 165 F.3d at 241 (finding equitable tolling appropriate where record

---

[10]   Given Plaintiff's arguments, the Court understands Plaintiff to mean that he believed the statute of limitations for his personal injury claims were tolled and did not begin to run until after his criminal complaint was dismissed.  In that connection, no date is provided by any party regarding the dismissal of Plaintiff's criminal matter.

16

demonstrated extent of attorney's misrepresentations and the plaintiff's "extreme" diligence to rectify noncompliance).[11]

In sum, Plaintiff has not demonstrated a sufficient basis for this Court to apply the substantial compliance or equitable tolling doctrines to the facts of this case to permit Plaintiff to pursue any claim that would be time-barred by the late filing of his Complaint. Thus, Plaintiff's tort claims against Jenkins and Candlelight, Plaintiff's gross negligence claim against Snyder, and Plaintiff's conspiracy claim against Snyder,[12] all of which Plaintiff does not dispute accrued on February 4, 2011, are barred by the applicable statute of limitations, and accordingly, the Court dismisses Counts One, Two, Three, Six, Nine, and Twelve. Similarly, Plaintiff's claim in Count Thirteen against all Defendants for violation of his constitutional rights under § 1983 is also time-barred as to those Defendants for which that claim is premised on Plaintiff's injuries that occurred on February 4, 2011. *Knoll v. Springfield Twp. Sch. Dist.*, 763 F.2d 584, 585 (3d

---

[11] Plaintiff additionally contends that he was prevented from timely bringing his claims because Defendants Snyder and Trenton Police conspired to subject Plaintiff to frivolous criminal proceedings that also caused him great distress. Plaintiff cites no authority in support of this contention; to the contrary courts have rejected identical bases for substantial compliance/equitable tolling. *E.g.*, *Byrd v. Manning*, 253 N.J. Super. 307, 319 (App. Div. 1992) (finding no basis for tolling based on ongoing, related criminal prosecution where "defendants' prosecution of plaintiff in the municipal proceeding cannot be deemed 'duress and coercion' . . . [where] absolutely no showing that the State's pursuit of the criminal complaint against plaintiff was for the purpose of deterring or inhibiting his civil action against defendants"). Indeed, under New Jersey law, as also applicable to § 1983 claims, "[t]he general rule is that in order that the pendency of other proceedings shall have the effect of tolling the statute of limitations on a cause of action, the proceedings must be such as to prevent enforcement of the remedy by action." *W.V. Pangborne & Co. v. New Jersey Dep't of Transp.*, 116 N.J. 543, 556-57 (1989); *cf. Green v. Potter*, 687 F. Supp. 2d 502, 518 (D.N.J. 2009) ("[I]n order to allow equitable tolling for reasons of 'mental incapacity,' 'the alleged mental illness must be demonstrated and compelling.'" (Citations omitted.)) *aff'd sub nom. Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174 (3d Cir. 2011)

[12] Plaintiff's conspiracy claim is appropriately dismissed because time-barred claims include derivative claims, such as a conspiracy claim. *See Patyrak v. Apgar*, 511 F. App'x 193, 196 (3d Cir. 2013) (citing *Knoll v. Springfield Twp. Sch. Dist.*, 763 F.2d 584, 585 (3d Cir. 1985)).

Cir. 1985) ("[E]ven though constitutional claims alleged under § 1983 encompass numerous and diverse topics and subtopics, the state statute of limitations governing tort actions for the recovery of damages for personal injuries provides the appropriate limitation period."). What remains from the Complaint are Plaintiff's claims against Snyder for false imprisonment and malicious prosecution, and Plaintiff's claims against Trenton Police based on Snyder's liability, which require further analysis.

Section 1983 claims for false imprisonment accrue "immediately upon the arrest at issue, and the period of limitations begins to run as soon as the false imprisonment ends, *i.e.*, when the arrestee becomes held pursuant to legal process," such as arraignment. *Telfair v. Tandy*, 797 F. Supp. 2d 508, 520 (D.N.J. 2011) (citing *Wallace v. Kato*, 549 U.S. 384, 389-90, (2007)); *see also Montgomery v. DeSimmone*,159 F.3d 120, 126 (3d Cir. 1998) ("A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."). Here, the Complaint only recites that Plaintiff was arrested on February 4, 2011. Absent from the record is the date of Plaintiff's arraignment or anything that would lead to the inference when he was arraigned. Although Snyder and Trenton Police argue in their papers that Plaintiff would have been arraigned on the same day as his arrest, they supply no evidence in support of their claim. As the Court cannot determine when Plaintiff was "detained pursuant to the legal process," his false imprisonment claim in Count Eight cannot be dismissed as time-barred. *Accord Hayes v. Morris*, Civ No. 13-0608 PGS LHG, 2013 WL 4046022, at *4 (D.N.J. Aug. 8, 2013); *Brockington v. Spano*, Civ. No. 11-6429 JAP, 2013 WL 1811903 (D.N.J. Apr. 29, 2013) ("[T]he Court is disinclined to dismiss these claims as untimely because without the date of arraignment, the Court cannot be certain as to when

Plaintiff's false arrest and false imprisonment claims actually accrued for statute of limitation purposes.").

Similarly, Plaintiff's claim for malicious prosecution accrued upon the termination of the criminal proceedings in his favor. *Smith v. Holtz*, 87 F.3d 108, 110 (3d Cir. 1996) (holding that a § 1983 claim based on malicious prosecution accrues when proceedings against the criminal defendant are dismissed); *Wiltz v. Middlesex Cnty. Office of Prosecutor*, Civ. No. 05-3915 (DMC), 2006 WL 1966654 (D.N.J. July 12, 2006) (holding that cause of action for malicious prosecution accrued on date of acquittal) *aff'd*, 249 F. App'x 944 (3d Cir. 2007). Again, this date is absent from the Complaint or the record; however, Plaintiff's state criminal history record contains a "disposition date" of November 4, 2011 for the relevant criminal charges. *See* Dkt. No. 18-1, 21. In any event, it necessarily follows that the that the criminal action Plaintiff would have been terminated after his arrest on February 4, 2011, and thus Plaintiff's malicious prosecution claim is be time-barred. Accordingly, Plaintiff's claim against Snyder in Count Seven will not be dismissed on this basis.

In that connection, because Plaintiff's claims in Counts Ten and Eleven against Trenton Police are premised on Snyder's actions, *i.e.*, they arise from the same alleged injury, those claims are not time-barred. Furthermore, because Trenton Police has moved to dismiss Plaintiff's claims on the sole basis that they are time-barred and not on whether Plaintiff has stated a claim upon which relief can be granted, the Court is constrained to find that Plaintiff's claims against Trenton Police are not barred by the statute of limitations to the extent those claims are based on Snyder's liability.[13]

---

[13] Nevertheless, the Court pauses to note that it is beyond dispute that a municipality may not be held liable under the doctrine of *respondeat superior*, and indeed, it may only be held liable based on an established custom or policy. *City of Canton v. Harris*, 489 U.S. 378, 385

19

### III.     CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff's claims against (i) NJDOC in Counts Four, Five, and Thirteen as barred by the Eleventh Amendment; and (ii) Jenkins in Counts One, Two, Three, and Thirteen; Candlelight in Counts Six and Thirteen, and Snyder in Counts Nine and Twelve, as barred by the statute of limitations.  The only remaining claims are those in Counts Seven and Eight against Snyder, and in Counts Ten and Eleven against Trenton Police, as well as Count Thirteen against both Snyder and Trenton Police.  All Defendants other than Snyder and Trenton Police are dismissed from this action.

An order will be entered consistent with this Opinion.


Dated: April 22, 2014                                        /s/     Freda L. Wolfson
                                                             Freda L. Wolfson, U.S.D.J.

---

(1989); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978).  However, Plaintiff has failed to identify any custom or policy in his Complaint.